UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re

COPPERFIELD INVESTMENTS, LLC,

                    Debtor.
----------------------------------------------------------------X
Plaza Equities LLC, Plaza Investments, and

M&O Enterprises, PSP, Inc.,
                 Plaintiffs,

-against-

David Pauker as Chapter 11 Trustee of
Copperfield Investments, LLC,

          Defendant-counterclaimant,

      -against-

John Kiley and Scott Kiley,

        Defendant on the counterclaims.
----------------------------------------------------------------X
Plaza Equities LLC, Plaza Investments, and M&O
Enterprises, PSP, Inc., John Kiley, Scott Kiley,
         Third Party Plaintiffs,

       -against-

Gerard M. Bambrick, Esq. and Bambrick& Ryan,
         Third Party Defendants.
----------------------------------------------------------------X

Case No. 07-71327-CEC

Chapter 11

Adv. Pro. 07-8253-
CEC

<u>DECISION</u>

APPEARANCES:

Douglas Furth, Esq.
Adam Silverstein, Esq.
Ancela R. Nastasi, Esq.
Anthony Vassalo, Esq.
Golenbock, Eisman, Assor Bell & Peskoe
437 Madison Avenue
New York, New York 10022
Attorneys for David Pauker, Chapter 11 Trustee
of the estate of Copperfield Investments, LLC

Martin G. Bunin, Esq.
Grant Stein, Esq.
William Hao, Esq.
Alston & Bird, LLP
90 Park Avenue
New York, New York 10016
Attorneys for Ficus Investments, LLC and Private
Capital Group, a Florida limited liability company

Daniel Torchio, Esq.
80 Third Avenue - 13th Floor
New York, New York 10022
Attorney for John Kiley, Scott Kiley,
Plaza Equities LLC, Plaza Investments, and M&O
Enterprises, PSP, Inc.

Valerie Millman, Esq.
Office of the United States Trustee
271 Cadman Plaza East, Suite 4529
Brooklyn, New York 11201

Wayne Greenwald, Esq.
99 Park Avenue, Suite 900
New York, New York 10010
Attorney for John Kiley, Scott Kiley,
Plaza Equities LLC, Plaza Investments, and M&O
Enterprises, PSP, Inc.

Burton Weston, Esq.
Afsheen Shah, Esq.
Garfunkel Wild & Travis
111 Great Neck Road, Suite 503
Great Neck, New York 11021
Attorneys for Private Capital Group, a Nevada
limited liability company, Private Capital
Management Corp., and Private Capital Corp.

John M. Lundin, Esq.
Schlam, Stone & Dolan LLP
26 Broadway
New York, New York 10004
Attorneys for Private Capital Group, a Nevada
limited liability company, Private Capital
Management Corp., and Private Capital Corp.

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of David Pauker, the chapter 11 trustee (the "Trustee") of the estate of Copperfield Investments, LLC (the "Debtor") to approve a settlement agreement with John Kiley, Scott Kiley (together, the "Kileys") M&O Enterprises, Inc., PSP, Inc., Plaza Equities LLC and Plaza Investments (collectively, the "Kiley Entities," and with the Kileys, the "Kiley Parties").  Ficus Investments, Inc. ("Ficus") and Private Capital Group, LLC, a Florida limited liability company ("PCG FL," and together with Ficus, the "Ficus Entities"), two related entities which together assert the largest claims against the estate, conditionally object to the approval of the settlement.  For the following reasons, the settlement is approved.

## Jurisdiction

This court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusion of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The following facts are undisputed.

On April 17, 2007, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor is in the business of holding and servicing real estate mortgages and the underlying debts.

On April 20, 2007, Ficus filed a motion to dismiss the case, or alternatively, to appoint a chapter 11 trustee, and also sought relief from the automatic stay to continue an action pending in New York state court.  Thereafter, on April 26, 2007, the Court granted Ficus's motion to the extent it sought appointment of a chapter 11 trustee.  On May 1, 2007, the Court granted the United States Trustee's a motion to appoint the Trustee as trustee in this case.

On August 7, 2007, the Bankruptcy Court entered an order directing the Trustee to hold all proceeds from certain mortgage loans to which the Kiley Entities assert a claim of ownership in a segregated account (the "Segregated Account").

On October 2, 2007, the Kiley Entities commenced an action (the "Kiley Action") against the Trustee for a declaratory judgment that they are the sole and exclusive owners of eighty three mortgages (the "Mortgages") in which the Trustee claimed an interest on behalf of the Debtor, and which the Debtor was administering. The Kiley Entities also sought an accounting of all servicing performed with respect to the Mortgages, and the turnover all proceeds received from, and all records relating to, the Mortgages, in addition to an award of damages.

On October 15, 2007, the Kiley Entities filed proofs of claim in this case relating to the Mortgages: Plaza Equities asserted a claim of $5,966,730; Plaza Investments asserted a claim of $4,700,431; and M&O Enterprises asserted a claim of $3,774,566.

On May 13, 2008, the Trustee interposed an answer to the Kiley Entities' complaint and asserted counterclaims. The Trustee asserted that the original instruments underlying the Mortgages were not transferred to the Kiley Entities pre-petition, and that the Kiley Entities did not perfect any security interest in the Mortgages. The Trustee also asserted that the Kiley Parties violated the automatic stay by back-dating assignments of the Mortgages to the Kiley Entities. The Trustee sought the avoidance of the post-petition assignments of the Mortgages, declaratory relief that the Kiley Entities do not own the Mortgages and that they are property of the estate, and directing the Kiley Parties to turn over all records relating to the Mortgages. On October 8, 2008, the Trustee amended his counterclaims and sought a judgment against the Kiley Parties for damages and to hold them in contempt for violating the automatic stay. The Trustee

further sought the equitable subordination of the Kiley Entities' proofs of claims against the estate relating to the Mortgages, in the event those claims are allowed.

On September 9, 2008, the Trustee filed a Disclosure Statement for the chapter 11 plan of liquidation ("Plan"), which was later amended on October 6, 2008, and October 8, 2008 (as amended, "Disclosure Statement"). On October 8, 2008, the Court approved the Disclosure Statement as containing adequate information with respect to the Plan.

On October 3, 2008, the Kiley Entities filed a motion for partial summary judgment in the adversary proceeding.

On October 17, 2008, the Trustee filed an objection to the Kiley Entities' proofs of claim.

On December 19, 2008, the Trustee filed the instant motion to approve a settlement with the Kiley Entities (the "Kiley Settlement"). Under the Kiley Settlement, the Kiley Entities will receive the Mortgages and proceeds thereof in exchange for a payment of $2,619,806, plus additional funds representing reimbursement of the expenses incurred by the estate in servicing the Mortgages. Specifically, the settlement provides for the conveyance to the Kiley Entities of all of the Mortgages which have not been sold, satisfied, or otherwise converted into cash proceeds. The Trustee will also deliver to the Kiley Parties copies of all files in his possession, custody and control relating to the servicing of the Mortgages, and will transfer to an account of the estate the following amounts: (a) $1,505,000, representing actual costs incurred by the Trustee in servicing the Mortgages; (b) an additional amount equal to the Trustee's reasonable estimate of the actual expenses of servicing the Mortgages incurred or to be incurred by the estate during the period from November 1, 2008 through and including the date of the closing of the settlement; (c) $100,000 in excess of such estimate; and (d) an additional $2,619,806. The

Trustee will deliver to John Kiley a reasonably detailed statement of the actual expenses incurred by the estate for servicing the Mortgages during the period from November 1, 2008 through and including the date of the closing not later than 30 days after the closing.  To the extent the estimated servicing costs that were deposited into the account are ultimately less than the actual expenses, the Trustee will give John Kiley the difference.  At the closing, all cash remaining in the Segregated Account will be disbursed to the Kiley Entities.  The Kiley Action will be dismissed with prejudice and the Kiley Entities' claims against the estate will be expunged.

On January 6, 2009, the Trustee filed the third amended Plan, which provides for payment in full of all allowed unsubordinated claims, except for the claims of Ficus and the Kiley Entities.  The Plan also included a settlement between the Trustee and Ficus. Ficus voted in favor of the Plan.  On January 26 and 30, an evidentiary hearing was held on the confirmation of the Plan and the approval of the Kiley Settlement.

The Ficus Entities have asserted a "conditional" objection to the Kiley Settlement, taking the position that the Kiley Settlement is appropriate if the Plan is confirmed, but should not be approved if the Plan is not confirmed.  The Trustee and the Kiley Entities have requested that the Court consider approval of the Kiley Settlement first, before addressing the issues involved in considering confirmation of the Plan.  Both the Trustee and the Kiley Entities persuasively argue that, from an economic standpoint, it is urgent that the Kiley Settlement be implemented quickly. The Kiley Entities believe strongly that it is critical that they regain management control of the Mortgages; to the Trustee, it is important to be free of the burden of administering the Mortgages as soon as possible.  This Court is therefore giving first consideration to the approval of the Kiley Settlement, and for the reasons set forth below, approves it.

## Legal Standard

A bankruptcy court may approve a compromise and settlement if it is fair, reasonable and adequately based on the facts and circumstances before the court. Fed. R. Bankr. P. 9019; In re Hibbard Brown & Co., 217 B.R. 41, 45 (Bankr. S.D.N.Y. 1998). "As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged." In re Adelphia Commc'ns Corp., 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007).

In determining whether a proposed settlement should be approved, a court must determine whether the settlement is in the best interests of the estate. In re Adelphia Commc'ns Corp., 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005). The court's responsibility is to "canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant), 699 F.2d 599, 608 (2d Cir. 1983) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)); Adelphia, 327 B.R at 159.

The court may give weight to the trustee's opinion that the settlement is fair and equitable. Adelphia, 327 at 159; In re Purofied Down Prods., 150 B.R. 519, 522 (S.D.N.Y. 1993); Official Comm. of Unsecured Creditors of Int'l Distribution Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distribution Ctrs., Inc.), 103 B.R. 420, 423 (S.D.N.Y. 1989). It is not necessary for the bankruptcy court to rule on disputed issues of fact and law or to conduct a "mini trial" on the merits of the underlying litigation. Adelphia, 327 B.R. at 159; In re Ashford Hotels, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998). At the same time, a court may not simply defer to a trustee's judgment, but must independently evaluate the reasonableness of the settlement. Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S.

414, 424 (1968); Kayo v. Fitzgerald, 91 Fed. Appx. 714, 716 (2d Cir. 2004); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).

A court will consider the following factors to decide whether a settlement falls above or below the lowest point in the range of reasonableness:

      a)      the likelihood of success compared to the present and future benefits offered by the settlement;

      b)      the prospect of complex and protracted litigation if the settlement is not approved;

      c)      the proportion of the class members who do not object or who affirmatively support the proposed settlement;

      d)      the competency and experience of counsel who support the proposed settlement;

      e)      the relative benefits to be received by individuals or groups within the class;

      f)      the nature and breadth of any releases to be issued as a result of the proposed settlement; and

      g)      the extent to which the settlement is the product of arm's length bargaining, and not the product of fraud or collusion.

Drexel Burnham Lambert, 134 B.R. at 497. See also In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997); In re Texaco, Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

Discussion

The Ficus Entities argue that the Disclosure Statement set forth a strong case against the Kiley Entities, which precludes the settlement from being approved, other than as part of the Plan. They state that the Disclosure Statement valued the Mortgages, which will be transferred to the Kiley Entities under the Kiley Settlement, at $9.2 million, and assert that the creditors will receive, in addition, $3.2 million of the $4,787,983 in the Kiley Account in the absence of the

7

Kiley Settlement, with the balance earmarked for related administrative expenses. Adding these sums, the Ficus Entities argue that if the Mortgages and the proceeds thereof were retained by the estate, the estate would have over $12 million in additional funds for distribution to creditors. Therefore, they argue that the estate is losing approximately $9.4 million with the settlement (representing the approximately $12 million the estate would receive if it retained the Mortgages and their proceeds, minus the $2.6 million it will receive under the Kiley Settlement). Because the Trustee's claims are so strong, the Ficus Entities argue, the only benefit of the settlement is the savings of litigation costs, which would be less than $9.4 million. The Ficus Entities argue that the benefit to the estate would be even greater if the Kiley Entities' claims were equitably subordinated, as the Trustee seeks by way of counterclaim. The Ficus Entities point out that if the settlement is approved, the distribution to creditors would increase from 69.8% to 73%, but if the settlement is not approved and the Kiley Entities' claims are subordinated, the distribution to creditors would be 81%.

In the Disclosure Statement, the Trustee described the relationship between the Kiley Entities, the Debtor, Thomas J. Donovan and the entities controlled by Mr. Donovan, including Private Capital Group, LLC, a Nevada limited liability company, Private Capital Corp., and Private Capital Management Corp. (each a "Donovan Entity"). The Trustee stated:

> A Kiley Entity would transfer money to a Donovan [Entity] in connection with a specific mortgage loan or mortgage loans then held by the Donovan [Entity], on the promise that the Kiley Entity would be repaid the full principal amount, plus an agreed-upon rate of return, either in the form of interest, a share of the profits generated by the Donovan [Entity] in liquidating the mortgage loans, or a combination of interest and profit. Originally, the Kiley Entity would get back the principal and half of the profit, but over time, different iterations of this arrangement have existed between the parties. . . .

> The Kiley Entities collectively transferred more than $12 million to PCG FL, the Debtor and/or other Donovan Entities in connection with these transactions.

(Disclosure Statement at 44.)

Based on the structure of the transaction, and on his investigation (Disclosure Statement at 9, n.2; 49, n.88; 56), the Trustee contended that the Mortgages are either property of the estate and/or of PCG FL. To the extent the Mortgages are property of the estate, the Trustee argued that the Kiley Entities were unsecured creditors of the estate because they had not perfected any security interest in any of the Mortgages pre-petition by filing UCC-1 statements, or by taking possession of the collateral. (Disclosure Statement at 44-45.)

The Trustee further stated in the Disclosure Statement that as of the petition date, no assignments of the Mortgages to the Kiley Entities had been recorded, and any assignments made were executed after the petition date. (Disclosure Statement at 46.) The Trustee stated that he believes that the Kiley Entities do not own the Mortgages because the provisions of the transactions resembled loan transactions as opposed to purchase transactions. The Trustee stated that he found, for example, that the transactions did not provide the Kiley Entities with the risks associated with ownership, that "the benefits of ownership were only conditionally, partially and indirectly transferred to the Kiley Entity," and that the Kiley Entities did not exercise typical rights of ownership, such as selling or conveying the Mortgages. (Disclosure Statement at 53-54.) The Trustee also asserted that the terminology used in the transactions, such as "Lender" and "Borrower," are similar to the terminology typically used in loan transactions. (Disclosure Statement at 53.)

9

The Trustee stated in the Disclosure Statement that he believed that the Kiley Entities and their principals violated the automatic stay by backdating assignments of the Mortgages to them, which were purportedly notarized in 2005 and 2006. (Disclosure Statement at 54.) Based on this alleged stay violation, the Trustee sought to subordinate the Kiley Entities' claims.

The Ficus Entities argue that there is overwhelming evidence in support of the Trustee's claims against the Kiley Entities, as outlined in the Disclosure Statement. However, while the Disclosure Statement sets forth the Trustee's contentions with respect to the estate's claims against the Kiley Entities, it also made clear that many of these contentions are disputed by the Kiley Entities. For example, the Disclosure Statement noted the Kiley Parties' contention that the Kiley Entities purchased the Mortgages from PCG Fl. (Disclosure Statement at 54, n.99.) The Kiley Entities contend that the books and records of the Debtor and PCG FL support their position. (Disclosure Statement at 54, n. 99.) The Kiley Entities also argue that their attorney held the mortgage instruments in escrow for the Kiley Entities' benefit, and therefore that no UCC-1s were needed because their security interest was perfected by the possession of the mortgage instruments. (Disclosure Statement at 54, n.99). The Kiley Entities also assert that their claims of ownership are supported by the fact that they never received a promissory note or other evidence of a loan in connection with any of the Mortgages. (Disclosure Statement at 55, n.99.) With respect to the assignments, the Kiley Entities argue that they gave valuable consideration in exchange for the unconditional assignment of the Mortgages. (Disclosure Statement at 55, n.99.)

Although the Ficus Entities would like this Court to believe that the issues are clear-cut, this Court cannot make such a finding. The most important consideration in determining

whether a settlement should be approved is the likelihood of success compared to the benefits of the settlement. Adelphia, 327 B.R. at 160. The proposed settlement provides for the estate to receive over $4.1 million, consisting of $2.6 million as a negotiated amount with respect to the parties' positions, and the remainder constituting reimbursement to the estate of expenses incurred in servicing the Mortgages. In seeking approval of the Kiley Settlement, the Trustee explained that, based on his investigation, which continued after the Disclosure Statement was filed, he concluded that it was likely that 43 of the Mortgages would be proven to be property of the estate, while the other Mortgages would be determined to be property of the other entities. (Trustee's Aff. ¶ 10.) The Trustee pointed out that even if he were successful in establishing that 43 Mortgages belonged to the estate, Mr. Kiley "would receive a claim for the loss of those properties from which he might ultimately receive a distribution approximately of 70%." (Trustee's Aff. ¶ 10.) The Trustee explained that the $2.6 million "represents the 30% that would be retained by the [e]state for distribution to other creditors", if the Court were to determine that the estate is the owner of 43 of the 83 Mortgages, and if the Court were to decide against equitable subordination of the Kiley Entities' claims. (Trustee's Aff. ¶ 12.)

The Trustee further acknowledged that there is a significant chance that he would not succeed in equitably subordinating the Kiley Entities' claims, because he was not certain of his ability to prove willful misconduct on the part of the Kiley Entities, and because "equitable subordination is an extraordinary remedy rarely invoked against creditors with valid underlying claims." (Trustee Aff. ¶ 11.) Thus, the Kiley Settlement provides the estate (without further litigation costs) with the economic equivalent of what the estate would receive if the Trustee were successful in establishing estate ownership of 43 of the 83 Mortgages, and were

11

unsuccessful in seeking equitable subordination of the Kiley Entities' claims - which reflects the Trustee's informed assessment of the likely outcome of the litigation.

The settlement will also save the estate the cost of litigating the claims and counterclaims asserted in the Kiley Action. Although the Ficus Entities argue that the continuation of the Kiley Action would not lead to protracted litigation, experience indicates otherwise. The Kiley Action has been pending for almost a year and a half, and the Kiley Entities' partial summary judgment motion is pending. Given the history of the bankruptcy case and the Kiley Action, it is not unreasonable to anticipate significant additional motion practice and litigation. The litigation between the Trustee and the Kiley Entities has been hotly contested, and the Trustee stated in the Disclosure Statement that it has been difficult to obtain requested discovery from the Kiley Entities. (Disclosure Statement at 50-52.) The Trustee points out that while he has expended substantial amounts of time and resources to investigate transactions involving the Mortgages, further factual and legal development would be required to prepare for trial, in addition to the costs of preparing numerous witnesses and experts, and the expense of conducting a trial. This Court concludes that it is not unreasonable for the Trustee to anticipate protracted litigation of the issues and high litigation costs.

The Trustee's lack of certainty about his ability to prevail on his equitable subordination claims against the Kiley Entities is well founded. Section 510(c)(1) of the Bankruptcy Code authorizes the court to equitably subordinate claims. 11 U.S.C. § 510(c)(1). A claim may be subordinated if that claimholder is guilty of misconduct. 4 Collier on Bankruptcy ¶ 510.05[1] (Alan N. Resnick & Henry J. Summer eds.,15th ed. rev.). This remedy is available when (1) the claimholder engaged in inequitable conduct, (2) the misconduct caused injury to the creditors or

12

conferred an unfair advantage on the claimholder, and (3) equitable subordination is consistent with bankruptcy law. 80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.), 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994). Cases in which equitable subordination is authorized generally involve fraud, illegality or breach of fiduciary duty; undercapitalization of the debtor by the claimholder; or control or use of the debtor as an alter ego for the benefit of the claimholder. Id. at 838. "The doctrine is also applicable to general creditors, but identifying the degree of conduct that will justify its invocation has proven even more 'slippery' and unpredictable." Id.

Here, it is far from clear that the Kiley Entities' claims would be equitably subordinated for their alleged violation of the automatic stay. Other remedies for violations of the automatic stay are available to the Court, such as a finding of contempt and the award of damages. See In re Chateaugay Corp., 920 F.2d 183, 187 (2d Cir. 1990) ("For [corporate] debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay."); In re Worldcom, Inc., 361 B.R. 697, 721 (Bankr. S.D.N.Y. 2007); United States v. D-M Sales Corp., 903 F. Supp. 431, 433 (E.D.N.Y. 1995) ("Generally, the purpose of holding a party in civil contempt is to enforce compliance with an order of the court or to compensate for losses or damages.") (quotation marks omitted).

Based upon this record, it is clear that the Kiley Settlement, which provides the estate with a recovery equivalent to that which it would receive if the litigation between the Trustee and the Kiley Entities concludes as the Trustee expects it will, falls well above the "lowest point in the range of reasonableness." W.T. Grant, 699 F.2d at 608 (quotation marks omitted).

Lastly, the Ficus Entities argue that their objection should be accorded deference because they are the largest creditors of the estate. It is true that, in determining whether to approve a settlement, "[t]he bankruptcy court should also consider the paramount interest of the creditors and give proper deference to their reasonable views." Spielfogel, 211 B.R. at 144 (citing In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988) and In re Am. Reserve Corp., 841 F.2d 159, 161 (7th Cir. 1987)). This does not mean, however, that a creditor - even a creditor holding the overwhelming majority of claims in the case - may arbitrarily veto a settlement that otherwise satisfies the criteria for approval. Here, all of the other relevant factors enumerated in Drexel Burnham Lambert, 134 B.R. 493, 497, support approval of the Kiley Settlement.[1] With respect to the balance between the likelihood of success compared to the benefits offered by the settlement, the Kiley Settlement provides the estate with the equivalent of its likely recovery in litigation, without further litigation cost. If the Kiley Settlement is not approved, the continuing litigation between the Kiley Entities and the Trustee is likely to be protracted and costly. Both the Trustee and his counsel are highly competent and experienced, and there is no allegation that the Kiley Settlement is anything other than the product of an arm's length negotiation.

In short, the record strongly supports approval of the Kiley Settlement. In evaluating the Ficus Entities' objection, this Court notes that the objection is conditional only; the Ficus Entities do not object to the Kiley Settlement if the Plan (which includes the Trustee's settlement with the

---

[1] As set forth above, those factors are: a) the balance between the likelihood of success compared to the present and future benefits offered by the settlement; b) the prospect of complex and protracted litigation if the settlement is not approved; c) the proportion of class members who do not object or who affirmatively support the proposed settlement; d) the competency and experience of counsel who support the proposed settlement; e) the relative benefits to be received by individuals or groups within the class; f) the nature and breadth of any releases to be issued as a result of the proposed settlement; and g) the extent to which the settlement is the product of arm's length bargaining, and not the product of fraud or collusion. Drexel Burnham Lambert, 134 B.R. at 497.

14

Ficus Entities) is approved. Given the factors in favor of approval of the Kiley Settlement, this Court concludes that the Ficus Entities' objection, if not a litigation tactic, is not well founded, and therefore is not entitled to the deference which would properly be accorded to a creditor's "reasonable views." <u>See</u> <u>Spielfogel</u>, 211 B.R. at 144.

### Conclusion

For all the foregoing reasons, the Kiley Settlement is approved. A separate order will issue herewith.

Dated: Brooklyn, New York
       February <u>*26*</u>, 2009

                                        *s/ Carla E. Craig*
                                        CARLA E. CRAIG
                                        Chief United States Bankruptcy Judge

15

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re

COPPERFIELD INVESTMENTS, LLC,

                       Debtor.
-----------------------------------------------------------------X
Plaza Equities LLC, Plaza Investments, and
M&O Enterprises, PSP, Inc.,
                    Plaintiffs,

-against-

David Pauker as Chapter 11 Trustee of
Copperfield Investments, LLC,

               Defendant-counterclaimant,

             -against-

John Kiley and Scott Kiley,

             Defendant on the counterclaims.
-----------------------------------------------------------------X
Plaza Equities LLC, Plaza Investments, and M&O
Enterprises, PSP, Inc., John Kiley, Scott Kiley,
             Third Party Plaintiffs,

            -against-

Gerard M. Bambrick, Esq. and Bambrick& Ryan,
            Third Party Defendants.
-----------------------------------------------------------------X

Case No. 07-71327-CEC

Chapter 11

Adv. Pro. 07-8253-CEC

MAILING CERTIFICATE

     I, Elise Kanter, hereby affirm that on February 26, 2009 a copy of a decision was served on the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

Douglas Furth, Esq.
Adam Silverstein, Esq.
Ancela R. Nastasi, Esq.
Anthony Vassalo, Esq.
Golenbock, Eisman, Assor Bell & Peskoe
437 Madison Avenue
New York, New York 10022
Attorneys for David Pauker, Chapter 11 Trustee
of the estate of Copperfield Investments, LLC

Martin G. Bunin, Esq.
Grant Stein, Esq.
William Hao, Esq.
Alston & Bird, LLP
90 Park Avenue
New York, New York 10016

Daniel Torchio, Esq.
80 Third Avenue - 13th Floor
New York, New York 10022

Wayne Greenwald, Esq.
99 Park Avenue, Suite 900
New York, New York 10010

John M. Lundin, Esq.
Schlam, Stone & Dolan LLP
26 Broadway
New York, New York 10004

Valerie Millman, Esq.
Office of the United States Trustee
271 Cadman Plaza East, Suite 4529
Brooklyn, New York 11201

Burton Weston, Esq.
Afsheen Shah, Esq.
Garfunkel Wild & Travis
111 Great Neck Road, Suite 503
Great Neck, New York 11021

Dated:   Brooklyn, New York
         February 26, 2009

                                                **s/ Elise Kanter**
                                                Elise Kanter